# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL ESTEP, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 4:10CV1989MLM |
| | ) | |
| TROY STEELE, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

This matter is before the court on the Petition for Writ of Habeas Corpus filed by Petitioner Michael Estep ("Petitioner") pursuant to 28 U.S.C. § 2254. Doc. 1. Respondent filed a Response to Order to Show Cause Why a Writ of Habeas Corpus Should Not Be Granted. Doc. 5. Petitioner filed a Reply to Respondent's Response. Doc. 10. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 7.

## I.
## BACKGROUND

Petitioner was charged by Amended Information, in St. Charles County Circuit Court, with one count of first-degree murder relating to the death of Tamera Hauser, pursuant to Mo. Rev. Stat. § 565.020. Specifically, the Amended Information alleged that Petitioner murdered Tamara Hauser by chocking her and that he knowingly caused her death by strangulation. Resp. Ex. B at 5- 6. On September 5, 2008, Petitioner pled guilty to second-degree murder, pursuant to a plea agreement wherein the State recommended a life sentence. Resp. Ex. B at 8. Petitioner was sentenced to life imprisonment. Resp. Ex. B at 9-10.

On January 29, 2009, Petitioner filed a pro se post-conviction relief motion. Resp. Ex. B at 14-21. Counsel was appointed and filed an amended motion. Resp. Ex. B at 22-50. On August 5, 2009, the motion court denied Petitioner post-conviction relief. Resp. Ex. B at 61-70. Petitioner filed an appeal with the Missouri appellate court of the motion court's decision. Resp. Ex. C. By decision, dated May 11, 2010, the Missouri appellate court affirmed the decision of the motion court. Resp. Ex. E. The Missouri appellate court also issued the mandate on May 11, 2010. Resp. Ex. F.

On October 20, 2010, Petitioner filed his § 2254 Petition, in which he raises the following issues:

**(1)** There was an insufficient factual basis for his guilty plea;

**(2)** Petitioner received ineffective assistance of counsel because counsel advised him to plead guilty to second-degree murder when there was no factual basis for his plea.

## II.
## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"), applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996. Lindh v. Murphy, 521 U.S. 320, 326-29 (1997). In conducting habeas review pursuant to § 2254 a federal court is limited to deciding whether decisions of state courts were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). "'Federal law, as determined by the Supreme Court,' refers to 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions.'" Evenstad v. Carlson, 470 F.3d 777, 782-83 (8th Cir. 2006) (quoting Williams v. Taylor, 529 U.S. 362, 412 (2000)). To obtain habeas relief, a habeas petitioner must be able to point to the

2

Supreme Court precedent which he thinks the state courts acted contrary to or applied unreasonably. Id. at 283 (citing Buchheit v. Norris, 459 F.3d 849, 853 (8th Cir. 2006); Owsley v. Bowersox, 234 F.3d 1055, 1057 (8th Cir. 2000)). Thus, where there is no federal law on a point raised by a habeas petitioner, a federal court cannot conclude either that a state court decision is "'contrary to, or involved an unreasonable application of, clearly established Federal law' under 28 U.S.C. §2254(d)(1)." Id. at 784. "When federal circuits disagree as to a point of law, the law cannot be considered 'clearly established' under 28 U.S.C. § 2254(d)(1). Id. at 783 (citing Tunstall v. Hopkins, 306 F.3d 601, 611 (8th Cir. 2002)). See also Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (holding that in the absence of controlling Supreme Court precedent, a federal court cannot reverse a state court decision even though it believes the state court's decision is "possibly incorrect").

In Williams v. Taylor, Under Missouri law, "a breach of contract claim includes the following essential elements: "(1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." Keveney v. Missouri Military Acad., 304 S.W.3d 98, 104 (Mo. 2010) (citing Howe v. ALD Servs., Inc., 941 S.W.2d 645, 650 (Mo. Ct. App.1997)). (2000), the United States Supreme Court set forth the requirements for federal courts to grant writs of habeas corpus to state prisoners under § 2254. The Court held that "§2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for writ of habeas corpus with respect to claims adjudicated on the merits in the state court." Id. at 412. The Court further held that the writ of habeas corpus may issue only if the state-court adjudication resulted in a decision that:

> (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established

3

> Federal Law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-13.

Williams further holds that the writ will not issue merely because the federal court concludes that the relevant state court decision erroneously or incorrectly applied clearly established federal law. See id. at 411. "'Rather [the] application [by the state-court] must also be unreasonable.'" Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000) (quoting Williams, 529 U.S. at 411). See also Siers v. Weber, 259 F.3d 969, 973 (8th Cir. 2001).

The Court further explained in Williams that for a state-court decision to satisfy the "contrary to" prong of § 2254(d)(1), the state court must apply a rule that "contradicts the governing law as set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." 529 U.S. at 406. See also Price v. Vincent, 538 U.S. 634, 640 (2003). It is not necessary for a state-court decision to cite, or even be aware of, applicable federal law, "so long as neither the reasoning nor the result of the state-court decision contradicts" federal law. Early v. Packer, 537 U.S. 3, 8 (2002).

For a state court decision to satisfy the "unreasonable application" prong of § 2254(d)(1), the state court decision must "identif[y] the correct governing legal principle from [the Supreme] Court's

4

decisions but unreasonably appl[y] that principle to the facts of [a] prisoner's case." Williams, 529 U.S. at 413. See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001). Upon explaining § 2254's legal standard, the Supreme Court held in Penry that "even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable." Id. at 793 (citing Williams, 529 U.S. at 410-11). The Eighth Circuit has held that "[t]o the extent that 'inferior' federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue." Atley v. Ault, 191 F.3d 865, 871(8th Cir. 1999).

Additionally, § 2254(d)(2) provides that an application for writ of habeas corpus should not be granted unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." Further, pursuant to § 2254(e)(1), "[a] state court's determination on the merits of a factual issue is entitled to a presumption of correctness." Boyd v. Minnesota, 274 F.3d 497, 500 (8th Cir. 2001). The state court's factual determinations "must be rebutted by clear and convincing evidence." King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001). For purposes of federal habeas relief, the state court decision involves an unreasonable determination of the facts in light of the evidence presented in state court proceedings "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003). See also Jones v. Luebbers, 359 F.3d 1005, 1011 (8th Cir. 2004) ("[A] state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C.

§ 2254(e)(1).").

The United States Supreme Court has defined the circumstances under which a state court reasonably applied federal law as follows:

> At the same time, the range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations. Cf. Wright v. West, 505 U.S. 277, 308-309, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (KENNEDY, J., concurring in judgment).

Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

### III.
### EXHAUSTION, PROCEDURAL DEFAULT AND TIMELINESS ANALYSIS

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings. Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997). Failure to raise a claim in a post-conviction appeal is an abandonment of a claim. Id. at 1150 (citing Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir. 1996)). A state prisoner who fails "'to follow applicable state procedural rules [for] raising the claims' (citation omitted) . . . . , is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies." Id. at 1151 (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)). "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas corpus claim." Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996) (en banc) (citation omitted). "[F]airly present" means that state prisoners are "required to 'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case

6

raising a pertinent federal constitutional issue.'" Id. at 411-12. A state-law claim which is raised in state court which "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." Id. at 412.

The United States Supreme Court holds that a state prisoner can overcome procedural default if he or she can demonstrate cause and prejudice for the procedural default. Dretke v. Haley, 541 U.S. 386, 388-89 (2004). See also Coleman, 501 U.S. at 750 (holding that a state habeas petitioner can overcome procedural default by demonstrating cause for the default and actual prejudice or demonstrate that default will result in a fundamental miscarriage-of-justice; Battle v. Delo, 19 F.3d 1547, 1552 (8th Cir. 1994).

Petitioner, in the matter under consideration, raised the issue of Ground 1 before the Missouri appellate court. He did not raise the issue of Ground 2 before the Missouri appellate court. As argued by Respondent, Petitioner has, therefore, procedurally defaulted the issue of Ground 2. Petitioner has not suggested cause or prejudice to excuse his procedural default. The court finds, therefore, that relief on the basis of Ground 2 should be denied.[1]

---

[1] The court notes, however, that even if it were to consider Ground 2 on its merits pursuant to a pre-AEDPA standard, Petitioner can not establish that habeas relief should be granted on its basis. Robinson v. Crist, 278 F.3d 862, 865 (8th Cir. 2002) ("[B]ecause this claim apparently was not adjudicated by the [state] court, we likely should apply the pre-AEDPA standard of review."). Strickland v. Washington, 466 U.S. 668, 687 (1984), requires that to establish that he received ineffective assistance of counsel, a habeas petitioner must show both that counsel's performance was unreasonable and that, but for counsel's unreasonable, performance, the outcome of Petitioner's trial would have been different. The United States Supreme Court has further held that to establish the ineffectiveness of counsel when a guilty plea is entered, a habeas petitioner must show that counsel's representation fell below "an objective standard of reasonableness" and that "'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" Gumangan v. United States, 254 F.3d 701, 705 (8th Cir. 2001) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). The court finds below that the underlying issue of Ground 2, that there was no factual basis for Petitioner's guilty plea, is without merit. Under such circumstances, Petitioner cannot establish that, but for counsel's alleged error, the outcome of his trial

Additionally, § 2244(d)(1) establishes a 1-year limitation period on petitions filed pursuant to § 2254. Petitioner filed his § 2254 Petition within this limitation period. As such, the court finds that his § 2254 Petition is timely filed.

## IV.
## DISCUSSION

In Ground 1, Petitioner contends that there was no factual basis for his guilty plea to second-degree murder. In support of Ground 1, Petitioner argues that he "did not mean to hurt anyone"; that it was not his mentality to commit the crime of which he was convicted; that he "was pressed into taking" the plea; that he did not "know any better"; that from what he "know[s] now, [he] did not commit murder"; that, since he was in an accident, he has not been "as sharp" as he used to be; and that he suffered frontal lobe damage in the accident, which affected his ability to make decisions. Doc. 10 at 1-3.

During the guilty-plea hearing, Petitioner admitted that he committed second-degree murder. Resp. Ex. A, Trial Transcript ("Tr.") at 8. He then testified as follows:

> To make the story as short as possible, Tammy and I had been doing meth for about a week. She had been going to all my band practices, been hanging out a whole lot. The night that it happened, I was in the kitchen, and I made me up a big shot of dope and started doing it, and it knocked me unconscious. It was too much. Next thing I know is I'm waking up and somebody is on top of me squeezing my head like a grape, and I just reacted. I felt threatened by the actions. I didn't even know at the time that it was Tammy that was on top of me. I didn't know until it was too late.
>
> First thing I did was grab her and started yelling, what the hell's going on? What the hell are you doing? You know, what's happening here? By the time I recognized who it was, I threw her back and left the room and walked around the room looking for my roommate wondering where he was. I was like, okay, maybe this

---

would have been different; that counsel's performance fell below an objective standard of reasonableness; or that he would not have plead guilty but for counsel's alleged error. As such, were the court to address Petitioner's Ground 2 on its merits, the court would find that it is without merit.

8

is over with.

> I went back in there and tried to talk to her and she didn't move. I went down and I checked her pulse, and I was like, oh, my God, I just killed her. I tried CPR for twenty, thirty minutes at least. And when I couldn't bring her back, I panicked. I freaked out. So first thing I did out of just, you know, what am I supposed to do about this, is I put the body in the trunk of a car and cleaned up everything and left, tried to figure out what I'm going to do. And it wasn't till later on before I admitted to anybody what I had done. I didn't mean to kill that girl. I didn't mean to.

Tr. 9-10.

After this statement, the court asked Petitioner the following questions:

The Court: Where were you when this occurred?

Petitioner: I was at my roommate's place. I had just moved in, 1006 Providence Point. That was the house that it was in.

The Court: And where is that? What city?

Petitioner: Wentzville.

The Court: Did you strangle Tamara Hauser?

Petitioner: Yes, sir.

The Court: And by doing so, is it your testimony today that you knowingly caused Tamera Hauser's death?

Petitioner: After - after it happened, yeah, it was too late.

Defense Counsel: Is that a yes or a no?

Petitioner: Yes, sir.

Tr. 8-10.

The court then asked the attorneys to approach and asked them the following:

The Court: Are you satisfied that the elements have been met, Ms. Barth [the Prosecutor]?

9

> The Prosecutor: I think that we have some problems with the strangulation.
>
> Defense Counsel: We need a little more factual basis. Also, I think in regard to the drug stuff, it's probably good to make sure he understands that is not a defense to cause of--or to any crime in the State of Missouri as to voluntary intoxication is not a defense. But clearly I think Ms. Barth is correct, we need more factual basis here with regard to the knowing.
>
> The Court: That was my concern was the knowing part. I mean, if he says he didn't know what he was doing until afterwards, then I don't think that works. I thought we had--
>
> Defense Counsel: No, I--he's--I think his main concern is that he did not set out to kill her when he was choking her and grabbing her. I mean, that was not his goal, in other words, which it doesn't--that's the difference between murder first and murder second.
>
> The Court: Right, that's not an element.

Tr. 10-11.

After defense counsel conferred with Petitioner, the plea hearing resumed and Petitioner agreed that voluntary drug intoxication was not a defense to second-degree murder. Tr. 12. Petitioner then admitted that he strangled Tamera Hauser and that he knew what he was doing while he strangled her. In particular, Petitioner testified as follows:

> The Court: The--let me go back then to what occurred on this occasion that you have described. I asked you if you strangled Tamera Hauser, and your answer to that is what?
>
> Petitioner: Yes.
>
> The Court: And did you know that you were strangling her at the time that you were doing it?
>
> Petitioner: Yes.

Tr. 12.

The court then accepted Petitioner's guilty plea to second-degree murder. Tr. 13. The court

10

found that Petitioner's plea was voluntarily entered, made with an understanding of the nature of the charge, and supported by a factual basis. Tr. 13.

Upon considering the issue of Petitioner's Ground 1, the Missouri appellate court considered the above quoted testimony and held as follows:

> Estep claims the motion court clearly erred in denying his motion for post-conviction relief because there was an inadequate factual basis to support his guilty plea to second-degree murder. Specifically, Estep asserts the record does not reflect he had the requisite mental state for second-degree murder. We disagree.

The Missouri appellate court considered that a guilty plea must be intelligently and voluntarily made; that the court's focus should not be on whether a "particular ritual" was followed or whether "every element" was explained at the plea hearing; and that the factual basis for a plea is established where the information clearly charges the defendant with all of the elements of the crime, the nature of the charge is explained to the defendant, and the defendant admits he is guilty as charged. Resp. Ex. E at 5. The Missouri appellate court considered the elements of the crime of second-degree murder under Missouri law, including that a person "knowingly causes the death of another person or, with the purpose of causing serious physical injury to another person causes the death of another person." Resp. Ex. E at 5-6. The court further considered that under Missouri law:

> A person acts knowingly "(1) '[w]ith respect to his conduct or to attendant circumstances when he is aware of the nature of his conduct or that those circumstances exist;' (2) "[w]ith respect to a result of his conduct when he is aware that his conduct is practically certain to cause that result." Section 562.016.3. A person acts "with purpose" "with respect to his conduct or to a result thereof when it is in his conscious object to engage in that conduct or to cause that result." Section 562.016.2.

Resp. Ex. E at 6.

The Missouri appellate court further considered that there was a factual basis for Petitioner's

11

plea in that the amended information charged Petitioner with all the elements of second-degree murder; that the nature of the charge was explained to Petitioner at the plea hearing; that Petitioner admitted he was guilty as charged; and that Petitioner pled guilty in exchange for the State's recommendation that he be sentenced to life in prison instead of risking a higher sentence upon going to trial. Resp. Ex. E at 6. The Missouri appellate court noted that, although there was a sufficient basis for Petitioner's plea, the trial court allowed him to confer further with his attorney to insure his plea was being made with a full understanding of the elements of the crime. Following this additional conference with his attorney, as noted by the Missouri appellate court, Petitioner "unequivocally admitted to the plea court that he strangled the victim and that he knew he was strangling her" at the time he was doing it. The Missouri appellate court found that "[b]ased on [Petitioner's] testimony regarding his conduct after the strangulation (his failure to report the victim's death promptly, his concealment of the victim's body, and his removal of the evidence at the crime scene) and [Petitioner's] admission that he knew he was strangling victim, the plea court could reasonably infer that [Petitioner] acted with the purpose of causing serious physical injury to the victim and caused victim's death." Resp. Ex. E at 7. The Missouri appellate court concluded, therefore, that the record demonstrated an adequate factual basis for Petitioner's guilty plea to second-degree murder. Resp. Ex. E at 7.

Pursuant to Williams, 429 U.S. at 412-13, the court will consider federal law applicable to the issue of Petitioner's Ground 1. Under federal law, "[a] plea of guilty is an admission of all the essential elements of an information or indictment so that no other proof on the part of the government is necessary for a judgment of conviction." Adkins v. United States, 298 F.2d 842, 844 (8th Cir. 1962) (citations omitted). Indeed, to meet constitutional standards, a plea must be entered

both voluntarily and with an understanding of the nature of the charge to which the defendant is pleading guilty. McCarthy v. United States, 394 U.S. 459, 467 (1969). Thus, upon accepting a guilty plea, a "judge must inquire into the defendant's understanding of the nature of the charge and the consequences of his plea." Id. at 467. As further stated by the Supreme Court:

> Rule 11 [of the Fed. R. Crim. P.] also requires the judge to satisfy himself that there is a factual basis for the plea. The judge must determine "that the conduct which the defendant admits constitutes the offense charged in the indictment or information or an offense included therein to which the defendant has pleaded guilty." Requiring this examination of the relation between the law and the acts the defendant admits having committed is designed to "protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge."

Id. at 467 (citing Fed. R. Crim. P. 11, Notes of Advisory Committee on Criminal Rules).

The Court also held, in McCarthy, that "[t]he nature of the inquiry required by Rule 11 must necessarily vary from case to case, and, therefore, we do not establish any general guidelines other than those expressed in the Rule itself." Id. at 467 n.20.

Upon considering the issue of Petitioner's Ground 1, the Missouri appellate court considered whether Petitioner's guilty plea was intelligently and voluntarily made, whether a the factual basis for his plea was established, whether the nature of the charge was explained to Petitioner, whether Petitioner admitted all the elements of the crime of second-degree murder, and whether Petitioner admitted that he was guilty of that crime. Only after concluding that these requirements were met did the Missouri appellate court conclude that the record demonstrated an adequate factual basis for Petitioner's guilty plea to second-degree murder. As such, the court finds that the decision of the Missouri appellate court in regard to the issue raised in Petitioner's Ground 1 is not contrary to federal law and that it is a reasonable interpretation of federal law. See McCarthy, 394 U.S. at 467;

13

Adkins, 298 F.2d at 844. Additionally, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. The court finds, therefore, that Petitioner's Ground 1 is without merit and that habeas relief on its basis should be denied.

## V.
## CONCLUSION

For the reasons stated above, the court finds that Petitioner's Ground 1 is without merit and that he has procedurally defaulted Ground 2. As such, Petitioner's § 2254 Petition for habeas relief should be denied in its entirety.

The undersigned further finds that the grounds asserted by Petitioner do not give rise to a any issues of constitutional magnitude. Because Petitioner has made no showing of a denial of a constitutional right, Petitioner will not be granted a certificate of appealability in this matter. See Tiedeman v Benson, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY ORDERED** that the Petition filed by Petitioner for habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**, in its entirely; Doc. 1

**IT IS FURTHER ORDERED** that a separate judgement will be entered this same date;

**IT IS FURTHER ORDERED** that, for the reasons stated herein, any motion by Petitioner for a certificate of Appealability will be **DENIED**.

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
Dated this 13th day of July, 2012.   UNITED STATES MAGISTRATE JUDGE